

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **TAMMY R. MURPHY,** ) | |
| ) | |
| **Claimant,** ) | |
| ) | |
| vs. ) | **Civil Action No. CV-13-S-1518-E** |
| ) | |
| **CAROLYN W. COLVIN, Acting** ) | |
| **Commissioner, Social Security** ) | |
| **Administration,** ) | |
| ) | |
| **Defendant.** ) | |

### MEMORANDUM OPINION AND ORDER OF REMAND

Claimant, Tammy Murphy, commenced this action on August 16, 2013, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ"), and thereby denying her claim for a period of disability, disability insurance, and supplemental security income benefits.  For the reasons stated herein, the court finds that the Commissioner's ruling is due to be reversed, and this case should be remanded to the Commissioner for further proceedings.

The court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied.  *See Lamb v.*

*Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ improperly considered the opinions of Dr. Sathyan V. Iyer, M.D, the consultative examiner, resulting in a hypothetical question posed to the vocational expert that did not include all of claimant's limitations. Upon consideration, the court concludes that contention is correct, and remand is warranted for further consideration of the medical evidence.

Social Security regulations provide that, in considering what weight to give any medical opinion, regardless of whether it is from a treating or consultative physician, the Commissioner should evaluate: the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. § 404.1527(d). *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

Dr. Iyer first examined claimant on July 9, 2011.  Claimant reported anxiety, depression, fibromyalgia resulting in "arthritis affecting several different joints," and migraines three times a week.[1]  The physical examination was essentially normal.  Of the most relevance, the examination of claimant's joints and musculoskeletal system revealed the following:

> She has full range of motion of neck, shoulder, elbows and wrists.  Grip strength is normal.  Muscle power of the upper extremities is normal.  She can place her hands behind her head and lower back.  Spine: Anterior flexion 80 degrees.  She has full lateral flexion, extension, and rotation motions.  She has full range of motion of hips, knees, and ankles.  [Straight Leg Raising test] is negative.  There is tenderness over the elbows, anterior chest wall, suprascapular areas, greater trochanters, and medial knees.  She also has flat feet bilaterally.  Her gait is normal.  She can walk on her heels, tiptoes, and squat.[2]

Dr. Iyer's diagnostic impressions included a history of chronic anxiety and depression, a history of migraines, a history of fibromyalgia, and Stage 1 hypertension.  Dr. Iyer opined that, in claimant's current condition, "she may have some impairment of functions involving bending, lifting, carrying, and overhead activities.  She does not have limitation of functions involving sitting, standing, handling, hearing, or speaking.  Underlying anxiety and depression may impair some functioning ability."[3]

---

[1] Tr. 508.
[2] Tr. 509 (alteration supplied).
[3] Tr. 510.

Dr. Iyer also completed a "Medical Source Statement of Ability To Do Work-Related Activities (Physical)" form on July 9, 2011. He indicated that claimant could frequently lift and carry up to ten pounds, occasionally lift and carry between eleven and twenty pounds, and never lift or carry more than twenty pounds. She could sit, stand, and walk for one hour at a time each. During an eight-hour workday, she could sit for a total of four hours, stand for a total of four hours, and walk for a total of four hours. She did not require the use of a cane to ambulate. She could frequently handle, finger, feel, push, and pull with both hands, but she could only occasionally reach. She could frequently use both feet to operate foot controls. She could occasionally climb stairs, ramps, ladders, and scaffolds; balance; stoop; kneel; crouch; and crawl. She did not have visual or hearing impairments. She could occasionally be exposed to unprotected heights, moving mechanical parts, operation of a motor vehicle, humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme heat and cold, and vibrations. She could tolerate moderate noise levels. She would be able to shop, travel without a companion for assistance, ambulate without using a wheelchair or assistive device, walk a block at a reasonable pace on rough or uneven surfaces, use standard public transportation, climb a few steps at a reasonable pace with the use of a single hand rail, prepare a simple meal and feed herself, care for her personal hygiene, and work with paper files.[4]

---

[4] Tr. 513-18.

Dr. Iyer completed some additional forms on August 28, 2011. Claimant explains the circumstances under which those forms were generated as follows:

> Since Dr. Iyer's assessment of residual functional capacity did not mention pain and since it did not take into account absenteeism directly related to recurrent migraine headaches (fibromyalgia and migraine headaches being the two severe impairments acknowledged by the ALJ to exist in this case), Dr. Iyer was approached by the attorney for the plaintiff and a request was made for a supplemental physical capacities evaluation based on the earlier physical examination of the plaintiff.[5]

The first form completed by Dr. Iyer on August 28, 2011 was a Physical Capacities Evaluation form. Dr. Iyer indicated that claimant could occasionally lift ten pounds and frequently lift five pounds — a greater limitation than he imposed a month earlier. Claimant could sit and stand, or walk, for four hours each during an eight-hour workday. She would not need an assistive device to ambulate, and she did not need to avoid dust, fumes, gasses, extreme temperatures, humidity, and other environmental pollutants. She could only rarely climb, balance, perform gross manipulation, bend, and stoop. Some of those limitations also were greater than what Dr. Iyer imposed a month earlier, when he opined that claimant could perform some of these activities "occasionally" or even "frequently." Claimant could occasionally push and pull with her arms and legs, perform fine manipulation, reach overhead, operate motor vehicles, and work with or around hazardous machinery — again representing a change from Dr. Iyer's earlier opinion, in which he opined that some

---

[5] Doc. no. 8 (claimant's brief), at 8.

of these activities could be performed "frequently." Claimant likely would be absent from work three days each month as a result of her impairments. Dr. Iyer stated that the medical basis for the restrictions he imposed was fibromyalgia and migraines.[6]

Dr. Iyer also completed a Clinical Assessment of Pain form in August. He indicated that claimant experienced pain to such an extent as to be distracting to the adequate performance of daily activities or work. Physical activity — such as walking, standing, sitting, bending, stooping, or moving extremities — would cause some increase in her pain level, but not so much as to prevent adequate functioning in such tasks. The side effects of prescribed medication would cause some limitations on claimant's ability to do work, but not to such a degree as to cause serious problems in most instances.[7]

The ALJ afforded great weight to Dr. Iyer's July opinions, but "no weight whatsoever" to his August opinion, because that opinion was "totally at odds with [Dr. Iyer's] medical opinion, a month earlier, performed without a re-examination by said doctor and lacking any explanation for said conflicts in the medical findings a month later."[8] The ALJ found that there was "no objective medical evidence" supporting Dr. Iyer's later opinion, and "no credible evidence that the claimant would

---

[6] Tr. 520.
[7] Tr. 521.
[8] Tr. 87 (alteration supplied).

miss work three days a month."[9]

The distinction between Dr. Iyer's two assessments is significant, because the vocational expert testified during the administrative hearing that an individual who consistently missed three days of work every month would not be able to perform claimant's past work, or any other work existing in significant numbers in the national economy.[10] The problem is that there is no way, based on the current record, to determine which one of Dr. Iyer's inconsistent assessments to credit.  The ALJ credited the first assessment, which was consistent with his residual functional capacity finding of the ability to perform a limited range of light work, and entirely discredited the second assessment, which would support a finding of disability.  The ALJ's reasons for doing so were that the second opinion was inconsistent with the first opinion, that Dr. Iyer did not give any explanation for the conflicts in the two opinions, and that Dr. Iyer did not re-evaluate claimant before issuing the second pinion.[11]  All of those premises are factually correct, but the court disagrees with the ALJ that they are adequate reasons for an outright rejection of Dr. Iyer's second opinion, and total reliance on the first opinion, to support a finding of no disability. The other medical evidence of record does not clearly support either a finding of

---

[9] *Id.*
[10] Tr. 125-26.
[11] Tr. 87.

disability or non-disability.  Thus, it was appropriate and necessary for the ALJ to rely upon the opinion of a consultative examiner.  But, because the consultative physician's opinion was internally inconsistent, it cannot constitute substantial evidence to support the ALJ's finding of no disability.  Remand is warranted for the ALJ to gather additional medical evidence to support his findings, whether by recontacting Dr. Iyer to resolve the inconsistencies in his two previous opinions, or by ordering an additional consultative examination, or by other means.

In accordance with the foregoing, the decision of the Commissioner is REVERSED, and this action is REMANDED to the Commissioner of the Social Security Administration for further proceedings consistent with this memorandum opinion and order.

The Clerk is directed to close this file.

DONE this 12th day of June, 2014.

_____
United States District Judge